# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:12-CR-26** |
| | ) | |
| **BALDEMAR ROBLES** | ) | |

## REPORT AND RECOMMENDATION

Defendant Baldemar Robles pled guilty to maintaining a drug-involved premises and being a felon in possession of a firearm. (Docket # 22.) Prior to sentencing, Robles moved to withdraw his plea, arguing that but for his attorney's inaccurate sentencing prediction he would not have pled guilty; and further, that his plea agreement is illusory–the projected sentence from his plea agreement is the same as what he would have received had he been found guilty at trial. (Docket # 48, 68.)

Robles's arguments are misplaced, however, as the mere inaccurate prediction of a sentence does not constitute ineffective assistance of counsel or otherwise allow for withdrawing a guilty plea. Moreover, Robles cannot show prejudice, and received several benefits from his plea agreement. Therefore, the undersigned Magistrate Judge recommends, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Criminal Procedure 59(b), and Northern District of Indiana Local Rule 72-1(b), that his motion be DENIED. This Report and Recommendation is based on the following facts and principles of law.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On April 25, 2012, Robles was charged in a six-count indictment with two counts of maintaining a drug-involved premises, two counts of distributing cocaine and marijuana, and two counts of being a felon in possession of a firearm.  (Docket # 1.)

On January 7, 2013, Robles entered into a plea agreement with the government (Docket # 22): pleading guilty to one count of maintaining a drug-involved premises (Count 2) and one count of being a felon in possession of a firearm (Count 4).  (Plea Agreement ¶ 8(a).)  In exchange, the Government dismissed the remaining four charges in the Indictment, recommended Robles receive an acceptance of responsibility reduction, stipulated the amount of drugs involved in his conviction, and recommended he receive the minimum sentence within the applicable guideline range.  (Plea Agreement ¶ 8(c)-(d).)

In his plea agreement, Robles acknowledged that his sentence would be determined by the Court after consideration of his pre-sentence investigation report ("PSI"), federal sentencing statutes, and the United States Sentencing Guidelines ("U.S.S.G."); that Counts 2 and 4 carried a statutory maximum sentence of twenty and ten years imprisonment respectively; that no one could predict what his sentence would be; that the Court has the "authority to impose any sentence within the statutory maximum" for his offenses of conviction; and that a guideline sentence was fair and reasonable.  (Plea Agreement ¶¶ 7, 8(b), (e), (g).)  Robles also acknowledged that his plea was made "freely and voluntarily," and that "no promises [had] been made to [him] other than those contained in this agreement."  (Plea Agreement ¶ 12.)

On January 24, 2013, the Court conducted Robles's change of plea hearing.  (Docket # 25.)  During the plea colloquy Robles testified that there were not any side agreements,

promises, or assurances extraneous to the plea agreement. (Plea Hr'g 7, 12.) Additionally, Robles testified that he understood that under the terms of the plea agreement he could receive twenty and ten year sentences of imprisonment for his convictions of Counts 2 and 4 (Plea Hr'g 13), and that his sentence would not be determined until after the PSI had been completed (Plea Hr'g 14-15). Robles also testified that he had talked with his attorney, Mr. Thoma, about his case and how the sentencing guidelines would apply, stated that he was satisfied with Mr. Thoma's representation, and agreed to waive any right to claim ineffective assistance of counsel. (Plea Hr'g 5, 7, 10.)

On February 11, 2013, the sentencing court adopted this Court's report and recommendation to accept Robles's guilty plea. (Docket # 27.)

Approximately three months later, on May 13, 2013, Robles's PSI was finalized. (Docket # 37.) The PSI found that Robles's sentence was subject to enhancement because he had two prior felony convictions for crimes of violence or controlled substance offenses, and as such, was designated a career criminal (carrying a criminal history category of VI). As a career criminal, the PSI recommended Robles serve the statutory maximum sentences of 240 months for Count 2, and 120 months for Count 4.

On August 12, 2013, Robles moved to withdraw his guilty plea, arguing he can show fair and just reasons for his withdrawal (Docket # 48), and on September 27, 2013, the Court conducted an evidentiary hearing on the motion (Docket # 56). At the hearing, Robles testified that prior to signing his plea agreement, he discussed his sentencing with Mr. Thoma, and Mr. Thoma suggested he would have a criminal history category of IV or V, depending on what enhancements Robles received, and predicted his sentence would be between 100 and 121

months if Robles was a category IV or 121 to 151 months if Robles was a category V. (Evidentiary Hr'g 5-7.)  Mr. Thoma repeated his sentencing prediction in a letter sent to Robles, dated January 2, 2013.  (Evidentiary Hr'g Dft.'s Ex. 1.)

Robles also testified that he signed the plea agreement because of Mr. Thoma's sentencing prediction, and that Mr. Thoma never suggested Robles would be classified as a career criminal; in fact, Mr. Thoma purportedly told Robles that two prior felony convictions for crimes of violence would not be considered in his sentencing because they occurred so long ago. (Evidentiary Hr'g 9, 12-13, 19-20.)  Robles further testified that although Mr. Thoma had discussed his possible sentence and used a PSI report from a previous conviction to help with the prediction, Mr. Thoma was not fully informed about his criminal history.  (Evidentiary Hr'g 14, 19.)  Additionally, Robles stated that he would not have signed the plea agreement had he known his projected sentence was the statutory maximum for Counts 2 and 4, and believes that his projected sentence in the PSI is the same as what he would have received had he been found guilty at trial, and therefore, provided him no benefit.  (Evidentiary Hr'g 10-11.)

At the hearing, however, Robles stated that he understood the significance of the plea colloquy, understood Mr. Thoma's sentencing prediction was not definitive, acknowledged that there were no promises or side agreements on the sentence he would receive, and admitted that during his plea colloquy he knew he could receive twenty and ten year sentences for his convictions of Counts 2 and 4 with the potential of thirty years if run consecutively. (Evidentiary Hr'g 26-29.)

After the evidentiary hearing, the Court directed the parties to submit briefs in support of their respective positions.  (Docket # 57.)  In his opening brief, Robles argued that his plea

agreement is illusory, and that he would not have pled guilty but for Mr. Thoma's inaccurate sentencing prediction.  (Docket # 68.)  In response, the government argued that precedent clearly shows that an inaccurate sentencing prediction does not constitute ineffective assistance of counsel.  (Docket # 71.)  In reply, Robles argues–without much elaboration–that the caselaw cited by the government is inapplicable.  (Docket # 74.)

## II.  LEGAL STANDARD

Federal Rule of Criminal Procedure 11 allows a defendant to withdraw his guilty plea after the plea has been accepted, but before a sentence is imposed "if he has a 'fair and just reason' for doing so."  *United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008) (quoting Fed. R. Crim. P. 11(d)(2)(B)).  This ability is not absolute, however, and when the defendant, as here, wishes to withdraw his plea after stating that his plea was given freely and knowingly, he bears a heavy burden showing a fair and just reason exists.  *United States v. Logan*, 244 F.3d 553, 558 (7th Cir. 2001); *United States v. Underwood*, 174 F.3d 850, 852 (7th Cir. 1999).

"Ineffective assistance of counsel renders a guilty plea involuntary, and thus is also a valid basis for withdrawing a guilty plea."  *United States v. Carroll*, 412 F.3d 787, 793 (7th Cir. 2005) (citations omitted).  "In the plea bargain context a defendant must establish that his counsel's performance was objectively unreasonable and that but for counsel's errors, he would not have pleaded guilty and instead gone to trial."  *United States v. Martinez*, 169 F.3d 1049, 1052-53 (7th Cir. 1999) (citing *Hill v. Lockhart*, 474 U.S. 52, 56-60 (1985).  "The first prong demands that counsel attempt to learn the facts of the case and make a good-faith estimate of a likely sentence."  *Id.*  The second prong demands the defendant "show that his lawyer's

deficiency was a 'decisive factor in [his] decision to plead guilty.'" *Id.* (quoting *United States v. Barnes*, 83 F.3d 939, 940 (7th Cir. 1996)).  This test is highly deferential to counsel and presumes reasonable judgment and effective trial strategy.  *Carroll*, 412 F.3d at 793.

### III.  ANALYSIS

Robles argues that he relied heavily on Mr. Thoma's prediction that he would receive a 100 to 121 month sentence of imprisonment, and that he would not have pled guilty to Counts 2 and 4 had he known his projected sentence was the statutory maximum for both counts.  Further, Robles argues that Mr. Thoma did not advise him that he would be considered a career criminal; in fact, he argues that he was told that two of his prior violent crimes convictions would not be considered for sentencing.  Robles also contends–without citation to caselaw or the U.S.S.G.–that his plea agreement is illusory as his projected sentence is the same as what he would have received had he been found guilty at trial.

Robles's argument is factually inaccurate and legally unsupported.  To begin with, Robles's argument that his plea agreement is illusory is seemingly irrelevant as he fails to point to a single case showing that an illusory plea agreement constitutes a "fair and just" reason for withdrawal.  Furthermore, regardless of relevancy, Robles's contention is patently false.  In exchange for pleading guilty to Counts 2 and 4, the government agreed to dismiss Counts 1, 3, 5, and 6 of the Indictment.  Had Robles gone to trial on all counts and was convicted–thus losing his acceptance of responsibility adjustment, and thereby increasing his offense level to 37–his guideline imprisonment range (assuming a criminal history category of VI) would begin at 360 months, not Count 2's 240 months (the statutory maximum becoming the guideline sentence).

Finally, had Robles gone to trial and been found guilty on all counts, and depending on the amount of drugs involved and whether he had a prior felony drug conviction, he was facing a potential statutory sentence of 120 years. *See Setser v. United States*, 132 S. Ct. 1463, 1468 (2012) ("Judges have long been understood to have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose . . . ."); *see also* 18 U.S.C. § 3584 (stating that "[i]f multiple terms of imprisonment are imposed on a defendant at the same time . . . the terms may run concurrently or consecutively"). In short, Robles received, at a minimum, significant material benefits from his plea agreement.[1]

Robles's contention that Mr. Thoma's inaccurate sentencing prediction constituted ineffective assistance of counsel is legally unsupported and contrary to precedent. The Seventh Circuit Court of Appeals has repeatedly held, "an attorney's 'mere inaccurate prediction of a sentence' does not demonstrate the deficiency component of an ineffective assistance of counsel claim." *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999) (quoting *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996)); *see United States v. Howard*, 341 F.3d 620, 622 (7th Cir. 2003) (an attorney's inaccurate prediction of potential sentence does not warrant withdrawal of a guilty plea); *United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990) (same). In fact, as is the case here, this is true even if the attorney failed to inform the defendant that by pleading guilty, he would be classified as a career criminal. *Barnes*, 83 F.3d at 939-40; *see also Martinez*, 169 F.3d at 1053 (finding no ineffective assistance of counsel, and affirming the denial of a motion to withdraw a guilty plea, where attorney told defendant his maximum sentence was five

---

[1] It should be noted that based on Robles's anticipated plea, Mr. Thoma also apparently helped with negotiations that led to the dismissal of some state charges pending against Robles in Kosciusko County, Indiana. (Evidentiary Hr'g 9-10.)

years, when in fact, it was forty-five years).

Although Mr. Thoma allegedly failed to inform Robles that he would be subject to career criminal status, making his sentencing prediction inaccurate, these actions do not constitute ineffective assistance of counsel. Rather, to rise to that level, there must be evidence of an "attorney's lack of good-faith effort to discover and analyze relevant facts and discuss them with the client." *Id.*; *see Barnes*, 83 F.3d at 939 ("Although the attorney's analysis need not provide a precisely accurate prediction of the respective consequences of pleading guilty or of going to trial, the scrutiny must be undertaken in good faith."). The record evidences Mr. Thoma's good-faith effort to determine the relevant facts on Robles's sentencing. Mr. Thoma met with Robles prior to him signing the plea agreement and discussed his criminal history and possible sentencing. To prepare and assist in this discussion Mr. Thoma brought a PSI from one of Robles's most recent convictions, and reviewed the PSI with Robles. Such actions demonstrate Mr. Thoma's good-faith attempt to learn the relevant facts of the case. *See Barnes*, 83 F.3d at 940 (rejecting ineffective assistance of counsel argument even though counsel was unaware of his client's prior parole revocation that when included into determining status, qualified him as a career offender because the attorney conducted his investigation of the facts in good-faith).

Moreover, during his plea colloquy, Robles repeatedly testified that he was fully satisfied with Mr. Thoma's representation and had discussed his case and possible sentencing with him. Robles cannot now retract these affirmations, and contend that his testimony during the plea colloquy was false. *See United States v. Stewart*, 198 F.3d 984, 986 (7th Cir. 1999) (rejecting defendant's ineffective assistance of counsel argument because defendant stated under oath that he had not been given defective advice during his plea colloquy); *see Coleman v. United States*,

231 F. App'x 512, 515 (7th Cir. 2007) (unpublished) (same); *Carroll*, 412 F.3d at 793 (same).

"Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." *Stewart*, 198 F.3d at 987; *see United States v. Mays*, 593 F.3d 603, 607 (7th Cir. 2010) ("When a proper Rule 11 colloquy has taken place, a guilty plea enjoys a presumption of verity and the 'fair and just' Rule 11(d)(2)(B) escape hatch is narrow.").

Given Mr. Thoma's investigation into Robles's criminal history, discussion with Robles on his possible sentencing, and Robles's testimony during the plea colloquy, it cannot be said that Mr. Thoma's performance was objectively unreasonable. *United States v. Brown*, No. 1:06-CR-23, 2008 WL 4498797, at *5 (N.D. Ind. Oct. 1, 2008) ("Even when counsel's advice is *incorrect*, it does not render a plea involuntary where a defendant states during a plea colloquy that he understands the consequences of his plea.") (emphasis in original).

"However, even if [Mr. Thoma's] counsel was objectively ineffective, it is far from clear that [Robles's] plea would have been different. *Martinez*, 169 F.3d at 1053. At the plea colloquy, the Court repeatedly inquired whether anyone had made any side agreements, promises, or assurances extraneous to the plea agreement, and Robles testified that there had not been. Robles also testified that he understood the statutory maximum sentence of imprisonment for his convictions on Counts 2 and 4 were twenty and ten years respectively, and that his sentence would be derived from the U.S.S.G. and other sentencing statues. *See United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) (rejecting ineffective assistance of counsel argument because defendant testified that no one had promised him a specific sentence in exchange for his plea); *Howard*, 341 F.3d at 622-23 (rejecting defendant's motion to withdraw his guilty plea

because he was informed twice during the plea hearing that he was facing a sentence much greater than the mandatory minimum); *United States v. Davey*, No. 3:06-CR-106, 2007 WL 2257655, at *1 (N.D. Ind. Aug. 3, 2007) (rejecting defendant's motion to withdraw guilty plea due to ineffective assistance of counsel because defendant testified during plea colloquy that his attorney had been effective and because attorney was informed of relevant facts and had considered possible legal defenses).

Robles's statements during the plea colloquy that he understood he faced the potential of receiving the statutory maximum sentences are "entitled to a 'presumption of verity' . . . and the answers contained therein are binding." *United States v. Winston*, 34 F.3d 574, 578 (7th Cir. 1994) (citation omitted); *see Martinez* 169 F.3d at 1053 (rejecting ineffective assistance of counsel claim because defendant testified during plea colloquy that there were not any promises or assurances extraneous to the plea agreement and that he understood he faced a statutory maximum sentence of forty-five years, not five years as had been stated by his attorney); *Brown*, 2008 WL 4498797, at *5 (rejecting defendant's motion to withdraw his guilty plea based on his counsel's mistaken advice about sentencing because defendant acknowledged during the plea hearing that he could be sentenced to the statutory maximum term of imprisonment). "Although [Robles] asserts that he would not have pled guilty but for his attorney's flawed predictions, his [plea] colloquy tells a different story." *Martinez*, 169 F.3d at 1054. "Because of the great weight [the Court] place[s] on these in-court statements, [the Court] credit[s] them over his later claims." *Id.* Similarly, Robles's statements at the plea hearing are entitled to the greater weight. Accordingly, Robles has failed to demonstrate Mr. Thoma's performance was objectively unreasonable.

Finally, even if Mr. Thoma's performance was objectively unreasonable, Robles was not prejudiced by the representation. "To demonstrate prejudice, the defendant must show that he would not have pled guilty and would have insisted on going to trial." *Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006). "Whether [the defendant] could have negotiated a better plea deal is irrelevant to the issue of prejudice in the ineffective assistance context." *Id.* Robles, however, does not even attempt to meet this burden as there was no mention at the hearing or in the briefs of a desire–let alone an insistence upon–going to trial. In fact, during the evidentiary hearing it became apparent that while Robles was unhappy with his counsel's apparently inaccurate prediction about his potential sentence under the plea agreement (Evidentiary Hr'g 10), he does not go so far as to suggest that the entire agreement should be jettisoned, which after all, and as earlier discussed, actually reduces his sentencing exposure. Consequently, Robles's mere disappointment with the eventual outcome of the plea agreement does not satisfy the prejudice prong. *See Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000); *see Berkey v. United States*, 318 F.3d 768, 772-73 (7th Cir. 2003) (mere allegation that defendant would have insisted on going to trial is not sufficient to establish prejudice).

## IV.  CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge recommends that Robles's motion to withdraw his guilty plea (Docket # 48) be DENIED. The Clerk is directed to send a copy of this Report and Recommendation to counsel for United States and counsel for Defendant. NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to

the proposed findings or recommendations. 28 U.S.C. § 636(b)(1)(B). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995); *Egert v. Conn. Gen. Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).

     SO ORDERED.

     Entered this 17th day of December, 2013.

/S/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge
